UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVID J., | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )    No. 2:24-cv-00042--LEW |
| | ) |
| MICHELLE KING, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability and Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erred by relying on the testimony of a medical expert who did not hear the Plaintiff's testimony about his subjective fibromyalgia symptoms. *See* Plaintiff's Brief (ECF No. 12) at 3.[1] I discern no harmful error and recommend that the Court affirm the Commissioner's decision.

## I. Background

The Plaintiff applied for benefits in 2019. *See* Record at 16. He appealed the final unfavorable decision on those claims to this Court, and the Commissioner ultimately agreed that his case should be remanded for further proceedings. *See David J. v. Soc. Sec. Admin. Comm'r*, No. 2:22-cv-00174-JDL. On remand, the Plaintiff's 2019 applications were consolidated with his subsequent 2022 applications

---

[1] The Plaintiff raised other arguments in his brief but withdrew them at oral argument.

1

and returned to an ALJ for a hearing. *See* Record at 629. The ALJ held that hearing in May 2023, following which she issued a written decision finding the Plaintiff not disabled. *See id.* at 629-41. In her decision, the ALJ found that the Plaintiff had the severe impairments of lumbar degenerative disc disease, irritable bowel syndrome, and fibromyalgia. *See id.* at 632. Considering those impairments, the ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he could occasionally use foot controls bilaterally; could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could never work at unprotected heights or with dangerous moving machinery; and needed to work in an office space with a bathroom facility located within one-hundred yards of his workstation. *See id.* at 633. The ALJ found that the Plaintiff could perform his past relevant work as a tube bender with such an RFC—or, alternatively, could perform other jobs existing in significant numbers in the national economy—and was therefore not disabled. *See id.* at 639-41. The Plaintiff elected not to request review of the ALJ's decision by the Appeals Council, making that decision the final decision of the Commissioner sixty-one days after October 25, 2023, the date of notice of the unfavorable decision. *See id.* at 626-28; 20 C.F.R. §§ 404.984(d), 416.1484(d).

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial

2

evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The Plaintiff argues that the ALJ committed reversible error in discounting his subjective complaints of fibromyalgia-related pain and fatigue based entirely on the objective medical evidence of record and compounded this error by relying on the testimony of agency nonexamining consultant Arnold Ostrow, M.D., who also relied solely on the objective medical evidence and did not hear the Plaintiff's testimony in violation of agency policy. *See* Plaintiff's Brief at 6-14. He urges this Court to follow the Fourth Circuit in holding "that ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia" because the impairment "does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020); *see* Plaintiff's Brief at 13-14.

3

As the Plaintiff's arguments highlight, fibromyalgia is a "syndrome of chronic pain" with an "uncertain cause" and sufferers often show no signs of musculoskeletal or neurological abnormalities upon examination. *Johnson v. Astrue*, 597 F.3d 409, 410 (1st Cir. 2009) (cleaned up). Recognizing the challenges of assessing such an impairment in the disability benefits context, the Commissioner published SSR 12-2p, 2012 WL 3104869 (July 25, 2012), which provides criteria for determining whether fibromyalgia constitutes a medically determinable impairment (MDI) and guidance on how to consider it during the sequential evaluation process. If fibromyalgia is found to be an MDI, the ALJ must, as with other impairments, "evaluate the intensity and persistence of the [claimant]'s pain" and other symptoms to "determine the extent to which" they limit the claimant's "capacity for work." *Id.* at *5. And if the "objective medical evidence does not substantiate the" claimant's "statements about the intensity, persistence, and functionally limiting effects" of his fibromyalgia symptoms, the ALJ must consider other evidence such as the claimant's daily activities, medication and treatment history, and statements by others about the claimant's symptoms. *Id.*

But just because fibromyalgia "symptoms are often not supportable by objective medical evidence," does not mean claimants with fibromyalgia are "automatically entitle[d] . . . to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). Indeed, ALJs are not obligated to "accept a claimant's allegations regarding the extent of his" fibromyalgia-related "limitations at face value," *Downs v. Comm'r, Soc. Sec. Admin.*, No. 2:13-CV-02-DBH,

4

2014 WL 220697, at *4 (D. Me. Jan. 21, 2014), and the claimant must still "adduce 'sufficient objective evidence to support a finding that [his] impairment(s) so limit[] [his] functional abilities that it precludes him . . . from performing any substantial gainful activity.'" *Jennifer T. v. Kijakazi*, No. 2:22-cv-00047-JAW, 2023 WL 118876, at *2 (D. Me. Jan. 6, 2023) (rec. dec.) (quoting SSR 12-2p, 2012 WL 3104869, at *2), *aff'd*, 2023 WL 1100310 (D. Me. Jan. 30, 2023); *cf. Ovist v. Unum Life Ins. Co. of Am.*, 14 F.4th 106, 123 (1st Cir. 2021) (noting that, unlike symptoms, the functionally limiting effects of fibromyalgia "do lend themselves to objective analysis" (cleaned up)).

With this framework in mind, I have no trouble concluding that the ALJ here followed the requirements of SSR 12-2p and properly considered more than just the objective medical evidence when evaluating the limiting effects of the Plaintiff's fibromyalgia. The ALJ found the Plaintiff's fibromyalgia to be a severe MDI, but concluded that his "statements, as reported in his Function Report and testimony, concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence *and other evidence in the record.*" Record at 632, 634 (emphasis added). Although she cited objective medical evidence such as "intact motor, sensory, and neurological exams" in support of this conclusion, the ALJ also explicitly considered "other evidence," as required, including the Plaintiff's daily activities and medicine and treatment history. Record at 633-39. The Plaintiff's attempts to demonstrate otherwise by selectively citing portions of the ALJ's decision are not persuasive. *See Christine M. R. v. Saul*, No.

5

3:19CV01752(SALM), 2021 WL 129415, at *19-20 (D. Conn. Jan. 14, 2021) (rejecting a claimant's similar attempt to point "to just one paragraph" in the ALJ's decision to show that the ALJ relied solely on the objective medical evidence when considering the limiting effects of fibromyalgia).

To the extent the Plaintiff argues that the ALJ erred by giving *any* consideration to the objective medical evidence (or lack thereof) when assessing the limiting effects of his fibromyalgia, *see* Plaintiff's Brief at 13-14, that argument misapprehends SSR 12-2p. SSR 12-2p "limits only the evidence used to *diagnose* the disease as medically determinable impairment . . . . It does not limit the evidence an ALJ can consider in evaluating the *severity* of fibromyalgia for purposes of determining a residual functional capacity." *Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020) (noting that objective medical evidence is relevant when evaluating the intensity and persistence of "pain (fibromyalgia's chief symptom)"); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence" showing "reduced joint motion, muscle spasm, sensory deficit or motor disruption" "is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, have on your ability to work").

The Fourth Circuit's contrary holding in *Arakas* is based on similar misapprehensions, and I recommend that this Court join other courts in declining to follow it. *See Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (rejecting a claimant's argument based on *Arakas* because,

among other things, it "would require ignoring SSR 12-2P's tenet . . . that objective evidence is relevant to evaluating the limiting effects of fibromyalgia"); *Stephanie G. v. O'Malley*, No. 22-cv-00904-RMM, 2024 WL 2271821, at *12-14 (D.D.C. May 20, 2024) (declining to follow *Arakas* and noting that although "an ALJ cannot reject a claimant's statements about" subjective symptoms "solely because they are not substantiated by the medical evidence, the ALJ may consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence" (cleaned up)).

The Plaintiff also contends that Dr. Ostrow—on whose opinion the ALJ primarily relied in crafting her RFC assessment—contravened SSR 12-2p by focusing on just the objective medical evidence of record when assessing the limiting effects of the Plaintiff's fibromyalgia. *See* Plaintiff's Brief at 6-14. In making this argument, the Plaintiff points to Dr. Ostrow's testimony that (1) examining physicians are in a better position to evaluate a claimant, (2) he was not in a position "to determine the quantity or quality of [the Plaintiff's subjective] complaints" because he had never examined the Plaintiff, and (3) he did take into account his own fibromyalgia patients' subjective complaints when treating them. *Id.* at 9, 13 (quoting Record at 659-60).

As an initial matter, the Plaintiff does not cite any authority indicating that Dr. Ostrow—as opposed to the ALJ—had to follow the analytical steps outlined in SSR 12-2p. *See* SSR 12-2p, 2012 WL 3104869, at *5 ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, *we* consider all the evidence in the case

7

record . . . ." (emphasis added)); *cf.* 20 C.F.R. §§ 404.1502(j), 416.902(p) ("We or us means, as appropriate, either the Social Security Administration of the State agency making the disability or blindness determination.").

Moreover, the crux of Dr. Ostrow's testimony was not that he had completely disregarded the Plaintiff's subjective complaints, but rather that his role as a nonexamining expert was to assess "how functionally significant" the Plaintiff's fibromyalgia was based on his review of the objective evidence of record and that he would defer issues of "credibility and reliability" to the ALJ. Record at 659-63; *see* SSR 12-2p, 2012 WL 3104869, at *2 ("As with any claim for disability benefits, before we find that a person with an MDI of [fibromyalgia] is disabled, *we must ensure there is sufficient objective evidence* to support a finding that [his] impairment(s) so limits [his] functional abilities that it precludes him . . . from performing any substantial gainful activity." (emphasis added)). Dr. Ostrow's testimony also shows that he was not focused exclusively on a lack of lab findings or clinical signs when assessing the Plaintiff's RFC—for example, in rejecting another expert's opinion that the Plaintiff would require a ten-minute break every hour, Dr. Ostrow explained that he did not see any evidence from physicians or other people documenting that the Plaintiff took a ten-minute rest every hour. *See* Record at 662.

The Plaintiff also highlights that because Dr. Ostrow testified first at the hearing he did not hear the Plaintiff's subjective testimony about pain and fatigue in contravention of HALLEX I-2-6-70(B), which required him to hear—or be provided a summary of—the Plaintiff's testimony. *See* Plaintiff's Brief at 6-11. The Plaintiff

8

contends that he was prejudiced by this mistake because hearing his testimony might have changed Dr. Ostrow's opinion. *See id.* at 10.

"In this circuit, the HALLEX does not have the force of law" and a violation of the HALLEX does not require remand unless a claimant demonstrates that it was an outcome determinative transgression of his constitutional right to due process. *Glenwood W. v. Kijakazi*, No. 1:20-cv-00409-JAW, 2021 WL 5236492, at *4 (D. Me. Nov. 10 2021) (rec. dec.) (cleaned up), *aff'd*, 2021 WL 5750184 (D. Me. Dec. 2, 2021).[2]

The Plaintiff has fallen short of this standard. The record that Dr. Ostrow reviewed was replete with the Plaintiff's subjective complaints of pain and fatigue, and the Plaintiff does not cogently identify any pertinent, noncumulative testimony that could have realistically changed Dr. Ostrow's opinion. *See Webber v. Colvin*, No. 2:15-cv-385-JDL, 2016 WL 11372626, at *4-6 (D. Me. May 8, 2016) (rec. dec.) (holding that a claimant failed to demonstrate a prejudicial violation of HALLEX I-2-6-70(B) where she failed to explain "how knowledge of her testimony could have changed [the testifying expert's] opinion of the scope of her . . . limitations"), *aff'd*, 2016 WL 4764903 (D. Me. Sept. 13, 2016). To the extent he suggests that hearing his

---

[2] The framework outlined in *Glenwood W.* is controlling. I am not persuaded otherwise by the out-of-district cases cited by the Plaintiff. *See* Plaintiff's Brief at 7-10. Furthermore, I am not persuaded that SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), makes the HALLEX binding law. *See* Plaintiff's Brief at 8. As this Court has previously noted, "SSR 13-2p is inapplicable in cases (such as this one) that raise no question concerning the materiality of [drug addiction and alcoholism] to a disability determination." *Wayne C. v. O'Malley*, No. 1:23-cv-00109-NT, 2024 WL 340792, at *3 (D. Me. Jan. 30, 2024) (rec. dec.), *aff'd*, 2024 WL 1109233 (D. Me. Mar. 14, 2024). I am likewise unpersuaded by the Plaintiff's attempt to use Appeals Council remand orders from other cases to demonstrate harmful error. *See* Plaintiff's Brief at 11; ECF No. 12-1; *Aalijah W. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1955, 2024 WL 1714484, at *5 (S.D. Ohio Apr. 22, 2024) (rec. dec.) (rejecting the argument that the decision of the Appeals Council in a different case is binding precedent), *aff'd*, 2024 WL 2315290 (S.D. Ohio May 22, 2024).

testimony would have changed Dr. Ostrow's mind about his need for additional breaks, *see* Plaintiff's Brief at 10, that argument falters because Dr. Ostrow discounted that limitation because of the lack of supporting objective evidence, *see* Record at 661-62, and the Plaintiff's subjective testimony could not have filled that gap.

### IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: January 31, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge